UNITED STATES v. GREAT NORTHERN RY. CO.

(District Court, E. D. Washington, E. D.   June 11, 1906.)

RAILROADS—SAFETY EQUIPMENT OF CARS—SCOPE OF FEDERAL STATUTE.

Act March 2, 1893, c. 196, 27 Stat. 531, as amended by Act April 1, 1896, c. 87, 29 Stat. 85 [U. S. Comp. St. 1901, p. 3174], and by Act March 2, 1903, c. 976, 32 Stat. 943 [U. S. Comp. St. Supp. 1905, p. 603], requiring common carriers engaged in interstate commerce to equip their cars with automatic couplers, etc., applies to all cars regularly used on any railroad engaged in interstate commerce not only while actually in use in such commerce but at all times when in use on such road.

On Demurrer to Complaint.

A. G. Avery, U. S. Atty., and J. B. Lindsley, Asst. U. S. Atty.

M. J. Gordon and Charles A. Murray, for defendant.

WHITSON, District Judge.   This action is brought to recover penalties provided by the act of Congress approved March 2, 1893, c. 196, 27 Stat. 531, as amended by the act approved April 1, 1896, c. 87, 29 Stat. 85 [U. S. Comp. St. 1901, p. 3174], and as amended by the act approved March 2, 1903, c. 976, 32 Stat. 943 [U. S. Comp. St. Supp. 1905, p. 603].   The title of the original act reads as follows:

"An act to promote the safety of employés and travelers upon railroads by compelling common carriers engaged in interstate commerce to equip their cars with automatic couplers and continuous brakes, and their locomotives with drive wheel brakes, and for other purposes."

An issue of law is raised by demurrer aimed at the fourth, fifth, and sixth causes of action.   It is alleged in the fourth cause of action that defendant hauled on its line of railroad out of Spokane in the state of Washington, a car regularly used in the movement of interstate traffic, without the equipment provided by law, although empty at the time. In the fifth cause of action it is alleged that the defendant hauled over its railroad in Hillyard in the state of Washington, a car loaded with and used in moving interstate traffic, consigned from St. Cloud in the state of Minnesota to Hillyard in the state of Washington, without being equipped as required by the acts mentioned.

The allegations of the sixth cause of action are that the defendant used on its line of railroad in Hillyard in the state of Washington a locomotive engine in moving a car containing interstate traffic, consigned from St. Cloud in the state of Minnesota to Hillyard in the state of Washington, when the coupling and uncoupling apparatus of the locomotive was out of repair and inoperative.   The sufficiency of these several allegations is challenged upon the sole ground that it does not affirmatively appear that the cars and locomotive were being used in interstate traffic, for the reason that reliance must be made upon the allegations that they were used only in the state of Washington.   Having reference to the constitutional powers of Congress, the argument is that a common carrier is not affected by the legislation which the plaintiff would invoke, because it does not apply to traffic within the states.

The title of the act of 1893 fully reflects the legislative intent as expressed in the act, and it is manifest that the purpose in view was the

regulation of commerce between the states by requiring common carriers to conform to certain requirements regarded as essential to the safety of employés and passengers. To sustain the demurrer would be to hold that it is beyond the power of Congress to control the instrumentalities through which interstate commerce may be carried on. But the prerogative necessarily carries with it the authority to prescribe the rules and regulations which shall apply to those engaged in it. Illustrations of the futility of any effort on the part of Congress to exercise its constitutional powers in this regard, if the contention made by the defendant can be sustained, are not far to seek. An interstate carrier might haul traffic from one state to another, there transfer it, and from thence transport it, without any of the safety appliances provided by law. If it be answered that this would be an evasion of the law, the result is susceptible of further illustration. Cars containing state traffic could be commingled with those containing interstate traffic, and thus defeat the purposes of the legislation upon the subject. The effect of this would be to endanger the train engaged in interstate traffic. Again, a carrier could use trains engaged entirely in state traffic upon its lines, without the requisite equipment, which might result in injury to passengers by coming in collision with a train engaged in interstate traffic. It is the carrier which the acts seek to regulate, and it is by this method that Congress has undertaken to bring the matter under control.

The Supreme Court in Johnson v. Southern Pacific Company, 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363, held that a dining car left on a track, which was being used by the defendant between different states, was within the prohibition of the legislation under consideration, although not being used in interstate traffic at the time of the occurrence of an accident to an employé. In reversing the Circuit Court of Appeals for the Eighth Circuit which held to the contrary view (117 Fed. 462, 54 C. C. A. 508), Coe v. Errol, 116 U. S. 517, 6 Sup. Ct. 475, 29 L. Ed. 715, was distinguished in this language:

"The distinction between merchandise which may become an article of interstate commerce, or may not, and an instrument regularly used in moving interstate commerce, which has stopped temporarily in making its trip between two points in different states, renders this and like cases inapplicable. Confessedly this dining car was under the control of Congress while in the act of making its interstate journey, and in our judgment it was equally so when waiting for the train to be made up for the next trip. It was being regularly used for the movement of interstate traffic and so within the law."

Referring to the purpose of the act it was said:

"If the language used were open to construction we are constrained to say that the construction put upon the act by the Circuit Court of Appeals was altogether too narrow."

It must be held that the allegations of the complaint bring the defendant within the acts of Congress, and the demurrer will accordingly be overruled.